2005 VT 80

**State of Vermont v. Arvi Anderson**

[890 A.2d 68]

No. 03-551

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed July 22, 2005
Motion for Reargument Denied September 22, 2005

*Dan M. Davis*, Windham County State's Attorney, and *Scott A. Willison*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

*Stephen L. Fine*, Athens, for Defendant-Appellee.

¶ 1. **Skoglund, J.** After a traffic stop that resulted in processing for driving while under the influence, the arresting officer served defendant Anderson with a Notice of Intention to Suspend and/or Disqualify Driver's License for Privilege to Operate, pursuant to 23 V.S.A. § 1205. At the preliminary hearing, Anderson moved to dismiss for failure to state a claim on which relief could be granted. He based his motion on the fact that the results of his breath test, as indicated on the suspen-

sion form, produced a reading of an alcohol concentration of 0.077, which is not "equal to or more than .08%," as required on the form. The court agreed and dismissed the civil suspension case. The State appeals and argues that the court erred in not allowing the matter to go to a final hearing, at which it would be allowed to introduce expert evidence relating Anderson's blood alcohol level back to the time he was operating a vehicle. We affirm the district court.

¶ 2. The State argues that, when the evidentiary test is below the legal limit, the State should be allowed to prove at the final hearing that the operator's BAC at the time of operation would have been greater than 0.08 by using the officer's affidavit and an affidavit of the State's chemist. This approach confuses the State's burden of proof at a civil suspension hearing with the statutory basis for commencing a civil suspension proceeding and fails to acknowledge the premise of the civil suspension procedure. The civil suspension procedure is designed to serve the remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads through purely administrative means. To that end, a law enforcement officer is authorized to issue a notice of intention to suspend, which itself serves as a temporary operator's license until the date of the suspension unless, within seven days, the operator contests the suspension and seeks a hearing in the district court. 23 V.S.A. § 1205(d)(2), (3). In this case, the officer lacked the statutory prerequisite to issuance of a notice of intention to suspend — a breath test reading of 0.08 BAC or more. Thus, the court was correct in determining that the officer's affidavit was "facially insufficient to support the commencement of civil suspension proceedings."

¶ 3. A review of the relevant statutes is in order. A criminal DUI is defined as follows: "A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway [] when the person's alcohol concentration is 0.08 or more; . . . or when the person is under the influence of intoxicating liquor." 23 V.S.A. § 1201(a)(1), (2). Recognizing that criminal cases can be protracted and slow to resolve, in the 1989 session, the Legislature created the civil suspension system to facilitate a speedy and summary procedure to get drunk drivers off the roads through license suspension. *State v. Stearns*, 159 Vt. 266, 271, 617 A.2d 140, 142-43 (1992). "The summary suspension scheme serves the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads." *State v. Strong*, 158 Vt. 56, 61, 605 A.2d 510, 513 (1992).

¶ 4. If an officer has reasonable grounds to believe that a person was operating, attempting to operate, or in actual physical control of a vehicle "in violation of section 1201," the officer shall request that the person submit to a breath or blood test to determine the person's alcohol concentration. 23 V.S.A. § 1202(a)(3). Consent to taking such tests to determine blood alcohol content is implied pursuant to § 1202(a)(1).

¶ 5. Under the civil suspension process, a law enforcement officer who requests an evidentiary test can issue a notice of intention to suspend, on behalf of the commissioner of motor vehicles, if the test result indicates that the person's alcohol concentration "was 0.08 or more at the time of operating, attempting to operate or being in actual physical control of a vehicle in violation of section 1201." 23 V.S.A. § 1205(c). The affidavit of the officer must accompany the notice, and it shall be sufficient if it avers that the officer had reasonable grounds to believe that the person was operating in violation of § 1201, and, after being informed of his or her rights under § 1202(d), the person submitted to a test whose results "indicated that the person's alcohol concentration was 0.08 or more, or the person refused to submit to an evidentiary test." § 1205(b). Thus begins the civil suspension process.

¶ 6. Pursuant to § 1205(a), upon affidavit of a law enforcement officer that the officer had reasonable grounds to believe that a person was operating, attempting to operate, or in actual physical control of a vehicle in violation of § 1201, and the person submitted to a test and "the test results indicated that the person's alcohol concentration was 0.08 or more at the time of operating, attempting to operate or being in actual physical control, the commissioner shall suspend the person's operating license ... for a period of 90 days and until the person complies with section 1209a of [Title 23]." Section 1205(a) governs the actions of the commissioner, not the law enforcement officer. For his part, the officer issues a notice of intention to suspend. The commissioner suspends after any challenge to the civil suspension is finally resolved — after it has been determined or conceded that the operator's BAC was 0.08 or more at the time of operation.[1] See also *id.*

---

[1] This authority of the commissioner mimics the authority given the commissioner prior to the enactment of the civil suspension process, when "[u]pon a finding by the court that the officer had reasonable grounds to believe that the defendant was ... operating, attempting to operate, or in actual physical control of a motor vehicle on a highway [while under the influence of intoxicating liquor or other drugs, or both], the court shall forward the report of the summary hearing to the commissioner of motor vehicles, who shall suspend

§ 1206(a) (governing suspensions after criminal conviction or final determination of an appeal).

¶ 7. The Legislature was aware of this important distinction and required that the process commence only upon an officer's affidavit stating that "[t]he officer obtained an evidentiary test (noting the time and date the test was taken) and the test indicated that the person's alcohol concentration was 0.08 or more . . . ." *Id.* § 1205(b)(5). To be clear, "alcohol concentration" means the number of grams of alcohol per 210 liters of breath, and the breath test indicates the person's alcohol concentration. *Id.* § 1200(1)(B), (3). Obviously, the test result indicates only the person's alcohol concentration at the time of the test. It does not, standing alone, establish the alcohol concentration at the time of operation.

¶ 8. However, the Legislature also created a statutory presumption to support an allegation that the person's BAC was 0.08 or more at the time of operation. Section 1205(n) provides that, "[i]n a proceeding under this section, if there was at any time within two hours of operating, attempting to operate or being in actual physical control of a vehicle an alcohol concentration of 0.08 or more, it shall be a rebuttable presumption that the person's alcohol concentration was 0.08 or more at the time of operating, attempting to operate or being in actual physical control." Thus, if a test taken one and one-half hours after an officer has stopped an operator results in a BAC of 0.08, the law will presume, and the officer may presume, that the person's alcohol concentration was 0.08 or more when he or she was operating the vehicle. In this case, the presumption does not operate.

¶ 9. When the intended civil suspension is contested, a hearing is scheduled. The issues to be decided at the final civil suspension hearing are set forth in § 1205(h). At the final hearing, as pertains to this case, the court must determine whether the officer had reasonable grounds to believe the person was violating 23 V.S.A. § 1201, whether the person's rights were adequately explained, and whether a test was properly taken and indicated a BAC of 0.08 or higher "at the time of operating, attempting to operate or being in actual physical control of a vehicle in violation of section 1201." *Id.* § 1205(h)(1), (2), (4). It is only after the final hearing that the commissioner suspends a license on the

the person's operator's license . . . for a period of one year." 1981, No. 103, § 6. See also 1983, No. 134 (Adj. Sess.), § 4.

grounds that, at the time of operation, the person's BAC was 0.08 or more at the time of operation. *Id.* § 1205(a).

¶ 10. At the hearing, the State can rely on the officer's affidavit to prove the officer had reasonable grounds to believe that the person was driving while under the influence, that the officer explained the person's rights, and that a test taken by a properly trained officer indicated a BAC level of 0.08 or more. The State can then rely on the affidavit of a chemist who works for the Department of Health, certifying that the test complied with Health Department regulations on breath-testing methods and was an accurate and valid indication of the alcohol concentration in the defendant's system at the time of the test. Thus, if a test result produces a reading of 0.08 or more, and there is no question of relating the test result back to the time of operation, the summary suspension hearing is indeed summary.

¶ 11. The confusion in this case stems from the Legislature's specification of a test result "at the time of operation" in § 1205(a) and (h)(4). As explained above, those sections address the elements to be proven at contested final hearings before the court and the ultimate authority of the commissioner to suspend a license, not the initial basis for a notice of intention to suspend. The necessary prerequisite of a civil suspension notice is an affidavit from the processing officer stating that he requested a breath test and "the test indicated that *the person's alcohol concentration was 0.08 or more.*" *Id.* § 1205(b)(5) (emphasis added). The officer's affidavit necessarily can attest only to the result generated by the test taken during the processing of the operator. Thus, as the trial court noted:

> [t]here is nothing in the statute from which it might be inferred that the Legislature intended to imbue law enforcement officers with the expertise of chemists, allowing them to issue civil suspension notices upon their own speculation that a DataMaster result lower than .08% would likely be extrapolated reliably to a breath alcohol concentration above the legal limit at the time of operation. Rather, presumably in the interests of creating a straightforward and streamlined proceeding, the Legislature provided that a notice of suspension must be supported by an affidavit indicating that "[t]he officer obtained an evidentiary test (noting the time and date the test was taken) and *the test indicated that the person's alcohol concentration was 0.08 or more* . . . ." (emphasis added), 23 V.S.A. § 1205(c)(5).

¶ 12. In this case, the officer had no basis to issue a notice of intent to suspend defendant's license because the blood alcohol test did not produce a result equal to or greater than 0.08.[2] Nor could the officer rely on the statutory presumption contained in § 1205(n) to support a notice to suspend.

¶ 13. The Legislature, in crafting this procedure to summarily suspend a person's license to operate a motor vehicle, intended the bright line to be a test result of 0.08. The State can still criminally prosecute an operator for drunk driving if the test result is less, assuming there is other evidence to either relate a test result back to the time of operation or to indicate actions and behavior that support a finding of intoxication. But the ability to commence a summary license suspension based solely on an officer's affidavit does not exist unless the test result is 0.08 or more.

¶ 14. The dissent suggests that the district court's ruling "imposes an additional element of the offense for civil suspension purposes — that is, that a test result must show that the operator had an alcohol concentration of 0.08 or greater *when the test was administered.*" Post, ¶ 29 (emphasis in original). First, that *is* exactly what a test result shows. The dissent confuses the elements necessary to support a civil suspension as delineated in subsection (a) (specifying, as noted above, when the commissioner shall suspend a license) with the legal sufficiency of the officer's notice of intention to suspend and its supporting affidavit found in subsection (b). These are not the same.

¶ 15. The dissent argues that the Legislature could have expected a trained officer to be able to identify "reasonable grounds" to believe that a person was operating with an alcohol concentration over 0.08, citing to § 1205(a). This is wrong. That section clearly requires a law enforcement officer to have reasonable grounds to believe that a person was operating in violation of § 1201(a), which governs both operation with an alcohol concentration of 0.08 or more *or* driving while under the influence. 23 V.S.A. § 1201(a)(1), (2). But, this case does not involve a crime, it involves a summary civil suspension, which needs as its genesis a breath test result of 0.08. *Id.* § 1205(b)(5).

¶ 16. The dissent also suggests that the rebuttable presumption found in § 1205(n) shows that the Legislature understood that in some

---

[2] This is, of course, not to say that an officer obtaining a test result of less than 0.08 cannot process the operator for a violation of § 1201(a)(2), operating under the influence of intoxicating liquor.

cases there would be no such test and "the State would have to bear the greater burden of relating back the test result." Post, ¶ 40. This is incorrect. If there is no test because the defendant refused, then suspension is automatic. The State's burden is lessened. For a civil suspension to proceed there must be either a refusal or a test result indicating a BAC of 0.08 or more at the time of operation. That BAC can be shown by the rebuttable presumption or through relation back evidence. But first there must be a test result of at least 0.08.

¶ 17. Understanding that subsections (a) and (h) address the elements to be proved for a summary suspension to take place and thus explain the difference between an officer's affidavit that merely relates what the test result showed and the ultimate question of whether the operator was violating § 1201, § 1205(c) requires further explanation. It authorizes a law enforcement officer to serve notice of intention to suspend on a person who submits to a test, "the results of which indicate that the person's alcohol concentration was 0.08 or more *at the time of operating, attempting to operate or being in actual physical control of a vehicle* in violation of section 1201." *Id.* § 1205(c) (emphasis added). At first blush, this section appears to assume the test will provide relation-back evidence. Again, it cannot. However, the statutory presumption, in conjunction with a test result of 0.08 or more, permits an inference that an operator's alcohol concentration was 0.08 or more at the time of operation.

¶ 18. When the Legislature created the summary suspension procedure, it permitted a suspension to occur without any court involvement, unless the operator contested the issue and requested a hearing. To create a threshold for suspension, it added a section affording law enforcement and the courts a presumption that, if a test result taken within two hours of operation produced a result of 0.08 or more, one could presume an alcohol concentration at the time of operation of 0.08 or more. In this case, there is no test result of 0.08 or more that would permit use of the statutory presumption. The officer had no statutory authorization to initiate a civil suspension case. The trial court is affirmed.

*Affirmed.*

¶ 19. **Dooley, J.,** dissenting. On its face, the majority decision appears to be a plausible interpretation of the statutory scheme as applied to the circumstances of this case. It is particularly plausible that the Legislature would have enacted a bright line standard so that the license suspension procedure could operate in a predictable and

summary fashion. The majority decision states good reasons why the scheme should work as it has described. In essence, the majority describes the statutory scheme that the Legislature could have, and perhaps should have, created.

¶ 20. We are not the Legislature, however. As desirable as the statutory scheme described by the majority may be, it is not the scheme that the Legislature actually enacted. The majority tries to deconstruct the statute to make the pieces fit, but they do not, and I therefore dissent.

¶ 21. Both the majority and I agree that to suspend an operator's license under the statute the State must show that the operator had a BAC of 0.08 or above *at the time of operation.* But the majority adds an additional element to the State's burden of proof — that defendant's BAC was 0.08 or more at the time the evidentiary test was taken. This additional element is not contained in the statutory scheme. Further, to the extent that there are inconsistencies in the statutory scheme, the legislative history unequivocally demonstrates that the provision the majority relies upon in support of its holding was not intended to prevent the State from initiating civil suspensions in cases where the evidentiary test result indicates a BAC below 0.08 at the time the test was administered. Nor does the majority's holding further the Legislature's policy of quickly getting drunk drivers off the roads, as the majority suggests; if anything, the holding makes it more difficult for law enforcement officers to accomplish that goal.

¶ 22. It is important to state the facts of this case to get a better understanding of the scope of the majority's holding. At 10:38 p.m. on the evening of October 25, 2003, a state trooper pulled defendant over for failing to stop completely and signal before turning onto a highway. The officer's affidavit indicates that, upon approaching defendant's truck, the officer detected an odor of alcohol emanating from the vehicle. The affidavit also indicates that the officer observed that defendant had watery eyes and that he was unsteady on his feet. After defendant had difficulty executing field sobriety tests, the officer administered a roadside alco-sensor test, which indicated a BAC of .093 at 11:03 p.m. Forty minutes later, at 11:43 p.m., defendant submitted an evidentiary breath sample indicating a BAC of 0.077. The officer issued defendant a notice of intention to suspend his license and wrote ".077" in the form to indicate the evidentiary test result.

¶ 23. At the preliminary hearing, defendant noted that the 0.077 figure was inconsistent with the language of the notice form. The State responded that it could establish at the final hearing that defendant's

BAC was 0.08 or greater at the time of operation by relating back the test result. The district court dismissed the civil suspension, ruling that the trooper's affidavit in this case was facially insufficient to support commencement of a civil suspension proceeding because it did not state that a test result indicating a BAC of 0.08 or more had been obtained, as required by 23 V.S.A. § 1205(b)(5). According to the court, "the statutory scheme for civil suspension plainly contemplates that the *initiation* of the summary procedures requires a DataMaster test result that supports the conclusion that the operator was above .08%, as evidenced by the arresting officer's affidavit." The majority affirms this ruling, also relying on the language of § 1205(b)(5).

¶ 24. This is a case of statutory construction. The summary suspension procedure was created in 1989, see 1989, No. 68, with virtually all the pieces contained in the current law. The one additional piece is 23 V.S.A. § 1205(b), added in 1991, the subsection on which the majority partially relies. As enacted in 1989, the statute contained not even a hint that the State must produce a test result indicating a BAC of 0.08 (then 0.10) or above at the time the test was administered. To the contrary, as discussed in more detail below, all statutory references to the time at which the BAC was to be measured were to the time the person was "operating, attempting to operate or . . . in actual physical control." 1989, No. 68, § 5 (amending 23 V.S.A. § 1205(a)). As it does today, the statute contained a presumption that allowed the State to relate back a test result to the time of operation. See *id.* (adding 23 V.S.A. § 1205(m)). As the majority opinion states, it was intended in 1989 to be "a speedy and summary procedure to get drunk drivers off the roads through license suspension." *Ante,* ¶ 3; see *State v. Strong,* 158 Vt. 56, 58, 605 A.2d 510, 511-12 (1992) (explaining summary procedure).

¶ 25. The majority necessarily believes one of two possibilities about the original 1989 law: (1) without saying so anywhere, the law required that the officer obtain a test result of 0.10 BAC (changed now to 0.08 BAC) or higher to proceed with a summary civil suspension; or (2) the officer could proceed with a test result under 0.10 as long as the officer could relate it back to show that the operator had a BAC above 0.10 at time of operation, attempted operation or actual physical control. I cannot tell which of these positions the majority holds, largely because it cites numerous subsections that existed in the 1989 law to support its position that a test result of 0.08 BAC is *now* required.

¶ 26. If the majority believes the former — that a test result of 0.10 BAC was required in 1989 — it is judicially legislating this result

without any support in the statutory language. Thus, I believe that the only real possibility is the latter — that the 1989 law did not require that the officer produce a test result at or above 0.10 BAC. That requirement had to come from a later amendment. Consequently, the real issue in this case is whether, in 1991, the Legislature intended § 1205(b)(5) to preclude the State from initiating civil suspension proceedings in situations when the evidentiary test indicates a BAC below the statutory maximum. See *Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 210, 762 A.2d 1219, 1227 (2000) (primary objective in construing statute is to effectuate intent of Legislature). My reading of the statutory scheme and the legislative history underlying § 1205(b)(5) leads me to the inevitable conclusion that the Legislature did not intend such a result.

¶ 27. In explaining my position, I first examine the statutory scheme. The operative statement of the violation, both for criminal prosecution and civil suspension, is contained in 23 V.S.A. § 1201(a)(1):

> (a) A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway:
> (1) when the person's alcohol concentration is 0.08 or more

Nine additional sections or subsections, either directly or indirectly by cross-reference, contain the language specifying that the BAC is measured at the time of operation, attempted operation or actual physical control.[3] For purposes of this case, the important applications

---

[3] See 23 V.S.A. § 1202(a)(3) (evidentiary test is required of person when officer has reasonable grounds to believe that person was operating, attempting to operate, or in actual physical control, in violation of § 1201); *id.* § 1203(f) (when officer has reason to believe person violated § 1201, officer may conduct preliminary breath alcohol screening test); *id.* § 1205(a) (Commissioner of Department of Motor Vehicles must suspend driver's license of person when law enforcement officer submits affidavit stating that officer had reasonable grounds to believe that person was operating, attempting to operate, or in actual physical control, in violation of § 1201 and (1) person refused to submit to test, or (2) person submitted to test indicating "that the person's alcohol concentration was 0.08 or more at the time of operati[on]"); *id.* § 1205(b)(3) (officer's affidavit is sufficient if it states that officer had reasonable grounds to believe person was operating, attempting to operate, or in actual physical control, in violation of § 1201); *id.* § 1205(c) (officer gives notice of intent to suspend when test results indicate person's alcohol concentration was 0.08 or more at time of operating, attempting to operate, or actual physical control); *id.* § 1205(h)(1) (issues at final civil suspension hearing include whether officer had reasonable grounds to believe person was operating, attempting to operate, or in actual physical control, in violation of § 1201(h)(1); *id.* § 1205(h)(4) (issues also include whether

of the DUI statute are the provisions in the civil suspension section, contained in § 1205. Specifically, subsection (a) provides that upon affidavit of an officer that the officer had reasonable grounds to believe that a person had an alcohol concentration of 0.08 at time of operation, the Commissioner of Motor Vehicles must suspend that person's operator's license. 23 V.S.A. § 1205(a). Subsection (c) *requires* the officer to notify the operator of the suspension when the circumstances described in (a) are present. *Id.* § 1205(c). Subsection (h) describes the court review, limiting the issues related to the test result to whether "the test results indicated that the person's alcohol concentration was 0.08 or more at the time of operating ... in violation of section 1201." *Id.* § 1205(h)(4).

¶ 28. Here, however, the district court's decision, accepted by the majority, was based on another subsection — § 1205(b)(5), which was added in 1991. 1991, No. 55, § 6.[4] Subsection 1205(b), entitled "Form of officer's affidavit," provides, in relevant part, that an officer's affidavit in support of a suspension under § 1205(a)

> shall be in a standardized form for use throughout the state and shall be sufficient if it contains the following statements:
>
> . . . .
>
> (5) The officer obtained an evidentiary test (noting the time and date the test was taken) and the test indicated that the person's alcohol concentration was 0.08 or more, or the person refused to submit to an evidentiary test.

¶ 29. The parties' dispute centers around the meaning of § 1205(b)(5). The district court effectively ruled that the plain language of § 1205(b)(5) imposes an additional element of the offense for civil suspension purposes — that is, that a test result must show that the operator had an alcohol concentration of 0.08 or greater *when the test*

---

test results show alcohol concentration of 0.08 or more at time of operation, attempted operation, or actual physical control, in violation of § 1201); *id.* § 1205(i) (after hearing, license shall remain suspended if court finds that officer had reasonable grounds to believe that person was operating, attempting to operate, or in actual physical control, in violation of § 1201 and (1) person refused to submit to test, or (2) person submitted to test indicating "that the person's alcohol concentration was 0.08 or more at the time [of] operati[on]"); *id.* § 1205(n) (if alcohol concentration was 0.08 or more within two hours of operation, attempted operation, or actual physical control, there is rebuttable presumption that it was above 0.08 at time of operation).

[4] When the language of current § 1205(b) was added it caused relettering of subsequent subsections through subsection (l).

*was administered.*[5] As discussed above, the addition of a new offense element is discordant with the many other statements of the offense elements in the subchapter on drunken driving. More importantly, it is in conflict with § 1205(h), which limits the issues in the court proceeding. Under the district court's construction, § 1205(b)(5) adds an element to the case the State must prove, and yet § 1205(h) prevents that element from being shown because it is not among the permissible issues that can be raised at a final civil suspension hearing.

¶ 30. I recognize that we have rules for resolving internal inconsistencies in statutes, but the first such rule is that we must deal with an apparent inconsistency by harmonizing the statutory sections to avoid the inconsistency. See *Gallipo v. City of Rutland,* 173 Vt. 223, 235, 789 A.2d 942, 951 (2001). This harmonizing process begins with a close examination of the district court's conclusion that the plain meaning of § 1205(b)(5) is to add an additional element to the offense. I find the district court's conclusion unpersuasive in two respects. First, the subsection deals with only the content of the officer's affidavit, specifying that it must be on a standard form, and stating that "it shall be sufficient" if it contains certain "statements." 23 V.S.A. § 1205(b). The subsection does not provide that the affidavit is insufficient if it does not contain those statements. Indeed, the required content of the affidavit is specified in subsection (a), not subsection (b), and subsection (a) requires a minimum alcohol concentration of 0.08 at the time of operation, not at the time of testing. The district court held that "the Legislature provided that a notice of suspension must be supported by an affidavit indicating that '[t]he officer obtained an evidentiary test (noting the time and date the test was taken) and *the test indicated that the person's alcohol concentration was 0.08 or more* . . . .' (emphasis added), 23 V.S.A. § 1205(c)(5)."[6] As discussed above, the "must be supported" language does not appear in the statute. Rather, the statute describes what content of the affidavit is "sufficient" without specifying what content is required.

---

[5] Although not directly in issue, the district court's ruling would not prevent criminal prosecution of the operator because the ruling is limited to the subsection applicable only to civil suspension, 23 V.S.A. § 1205(b)(5). The difference in result is anomalous and cannot be justified by the summary nature of the civil suspension proceeding because it means that the civil suspension proceeding requires proof of an additional element, not required in the criminal proceeding.

[6] The district court erroneously cited the section as 23 V.S.A. § 1205(c)(5). It is clear from the context that it meant § 1205(b)(5).

¶ 31. Second, the words of § 1205(b)(5) do not explicitly state that a BAC of 0.08 is required at the time of testing. The language is silent on the timing of the BAC measurement. While I agree that in isolation the more logical interpretation of the wording is that the BAC indicated by the test result alone must be above the minimum of 0.08, the failure to state that explicitly introduces an ambiguity, especially because all of the other sections in the statutory scheme do state explicitly the point in time for which the required alcohol concentration must be found. Thus, it is possible that the Legislature used the words of § 1205(b)(5) as a shorthand for the longer statement that the BAC determination is made at the time of operation.

¶ 32. For these two reasons, I conclude that § 1205(b)(5) does not have a plain meaning, and is ambiguous. While the ambiguity can be resolved from the language alone, we have in this case another statutory construction tool — legislative history — to harmonize the statutes. See *Green Mtn. Power Corp. v. Sprint Communications*, 172 Vt. 416, 420, 779 A.2d 687, 691 (2001) (recognizing that when statutory language is ambiguous, "legislative history may be used to determine the intent of the Legislature"). Here, the legislative history greatly undercuts the district court's and the majority's interpretation of the statute. Indeed, the legislative history makes it plain that the Legislature did not intend to add as an element of the offense that the operator must have an alcohol concentration above 0.08 at the time the test was administered.

¶ 33. The 1989 law had no subsection on the form of the officer's affidavit; the requirements were generally set out in § 1205(a) without the concept of a statewide, standardized form. In 1991, the Legislature added subsection (b) on the form of the officer's affidavit. 1991, No. 55, § 6 (adding 23 V.S.A. § 1205(b), among other amendments). The addition of § 1205(b) was not part of the original bill introduced in 1991. Rather, the language was drafted by Gary Kessler of the State's Attorneys and Sheriffs Department and inserted into the bill by the Senate Judiciary Committee. At a March 7, 1991 hearing before the Committee, Kessler testified that he drafted the provision to respond to police complaints about the amount of paperwork involved in processing civil suspensions. He explained that the provision was intended to standardize and streamline police paperwork by shortening the length of the required affidavit. He emphasized that he arrived at the criteria set forth in the provision by incorporating the issues allowed at the final hearing under § 1205(h). When members of the Committee asked Kessler if then Defender General Bud Allen had

approved the provision, Kessler left the committee room to find Allen and later reported back that Allen was content with the language as long as the new provision preserved the issues contained in § 1205(h).

¶ 34. The provision drafted by Kessler was not changed and later became § 1205(b). At no time did the Committee discuss whether the new provision would add an additional element to the State's burden of proof or the officer's power to initiate a civil suspension, and certainly there is no hint that such a result was intended. Rather, the apparent intent behind the amendment was to lighten the State's burden, *not to increase it* as the majority holds. In any case, nothing in the Committee's discussion suggests that it "intended the bright line to be a test result of 0.08." *Ante,* ¶ 13. Indeed, the content of the Committee's discussion is to the contrary.

¶ 35. I conclude from the legislative history that the district court's interpretation of § 1205(b)(5) is incorrect. There was clearly no intent to expand the issues to be considered in the civil suspension proceeding as specified by § 1205(h) — whether the person had a BAC of "0.08 or more at the time of operat[ion]." The BAC at the time of test administration is not an issue before the court in a suspension proceeding under § 1205(h). Rather, it is likely that the drafter chose the language of § 1205(b)(5) as a shorthand for the requirement in all the other statutory sections, and specifically that of § 1205(h)(4). Thus, § 1205(b)(5) must be construed to refer to the BAC at the time of operation.

¶ 36. I cannot agree with the majority's distinction between elements the State must prove at the civil suspension hearing and those that must be present when the law enforcement operator prepares an affidavit. The statute sets out one integrated proceeding that begins with the officer's affidavit and concludes with review by the district court if requested.[7] The distinction advanced by the majority would make sense if the State could initiate a civil suspension proceeding without an affidavit, or despite a flawed affidavit, and prove the final hearing issues as specified in 23 V.S.A. § 1205(h). Obviously, the majority does not believe that such bifurcation of the process is possible; it would affirm the termination of the process in this case with

---

[7] The issue first came up at the preliminary hearing in this case, but there is no requirement that it be raised then. Indeed, in numerous cases, we have had appeals where the operator challenges a test result at the final hearing. I assume the majority, despite its distinction, would require the district court to dismiss the civil suspension hearing if the issue of the test result first arose at the final hearing.

no opportunity for the State to reach the final hearing. Thus, the majority is advocating a distinction without a difference — irrespective of how the issue arises, the majority would hold that no suspension could ever occur without a showing that the operator had a BAC above 0.08 at the time the test was administered, obviously an element of the offense beyond those specified in § 1205(h).

¶ 37. The real conflict in the majority's attempt to parse through the statutory language to explain inconsistency with its construction comes when it reaches § 1205(c). The subsection not only authorizes, but *requires*, the officer to submit a notice of suspension to an operator whose test shows a BAC of 0.08 or above at time of operation. The language reads: "On behalf of the commissioner of motor vehicles, a law enforcement officer … directing the administration of an evidentiary test shall serve notice of intention to suspend … on a person who submits to a test the results of which indicate that the person's alcohol concentration was 0.08 or more at the time of operating, attempting to operate or being in actual physical control of a vehicle in violation of § 1201 of this title." *Id.* § 1205(c). If the majority's distinction were correct, and the Legislature had intended to require a test result with a 0.08 BAC or above, it would have said so in this subsection. Instead, just as in other sections, it specifies that the time for the measurement of the BAC is "the time of operating, attempting to operate or being in actual physical control," *id.*, and says nothing about a requirement that there be a test result above 0.08 BAC. The majority suggests that the legislative language can be explained by the presence of the evidentiary presumption in § 1205(n) that relates back a test result of 0.08 BAC or greater, a presumption that existed in 1989 before the majority's new requirement. It is far easier and better explained by a plain meaning interpretation that does not import nonexistent requirements into the language.

¶ 38. Based on the facts described in the outset of this dissent, the officer in this case followed the command of the statute; he could not do otherwise. The majority provides no answer to the conflicted position in which it has placed the officer, other than to ignore the language of the statute and his duty under it.

¶ 39. Defendant and the district court have raised additional reasons for requiring a test result over 0.08, but they are not persuasive. The trial court reasoned that the Legislature did not intend "to imbue law enforcement officers with the expertise of chemists, allowing them to issue civil suspension notices upon their own speculation that a DataMaster result lower than .08% would likely be extrapolated

reliably to a breath alcohol concentration above the legal limit at the time of operation." I note that the statutory standard is that "the officer had reasonable grounds to believe" that the person was operating with a BAC over 0.08 and not that the officer know it with certainty. 23 V.S.A. § 1205(a). I believe that the Legislature could have expected a trained officer to meet that standard without a test result above 0.08 in some instances. In saying that, I agree that those instances will be relatively rare, but this case demonstrates those rare circumstances because the officer had (1) physical signs of intoxication, including defendant's inability to complete field dexterity tests; (2) a contemporaneous roadside alco-sensor test result above the legal limit; (3) an evidentiary test result submitted more than an hour after operation and yet only 0.003 under the legal limit; and (4) information about the person's eating and drinking history immediately before the stop.

¶ 40. Finally, I do not agree with defendant that the rebuttable presumption set forth in § 1205(n) demonstrates that the Legislature intended to limit civil suspensions to instances in which the test result was 0.08 or more. That statute provides that a showing that a person's BAC was 0.08 or higher within two hours after operation creates a rebuttable presumption that the person's BAC at time of operation was above 0.08. The purpose of the statute is to place the burden of producing relation-back evidence on the party best able to meet it — the defendant. *State v. Pluta*, 157 Vt. 451, 455, 600 A.2d 291, 293 (1991). In this case, of course, the presumption is not applicable because the basic fact — a test result of 0.08 or more — is not present. See V.R.E. 301(c)(1). Defendant's argument is that the Legislature showed by this subsection that there would always be a test result above 0.08 and that the presumption would serve to relate it back. In fact, the statute shows the opposite. Its statement of what will happen if there is a timely test suggests strongly that the Legislature understood that in some cases there would be no such test, in which case the State would have to bear the greater burden of relating back the test result.

¶ 41. In sum, notwithstanding significant evidence that defendant was alcohol impaired with a BAC above 0.08 at time of operation, the majority has affirmed the district court's dismissal of the State's civil suspension complaint based on an added element of the offense never contemplated by the Legislature. I would reverse the trial court's decision and remand the matter for a final civil suspension hearing.