2003 VT 25

## State of Vermont v. Patrick James McQuillan, et al.

[825 A.2d 804]

Nos. 02-285, 02-278, 02-279, 02-289, 02-307, 02-349, 02-404, 02-471, 02-495, 03-009, 03-115 and 03-116

Present: **Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed March 28, 2003

*Stuart G. Schurr*, Staff Attorney, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*David C. Sleigh* of *Sleigh & Williams*, St. Johnsbury, for Defendants-Appellants.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** In the above-consolidated appeals involving prosecutions for DUI (driving under the influence of intoxicating liquor), defendants challenge the district court's refusal to suppress breath tests based on their contention that the administrative rules pertaining to the collection of breath samples are legally insufficient. We affirm.

¶ 2. Before addressing the principal issue common to each of the consolidated appeals, we consider the lead defendant's argument that the district court did not have jurisdiction to suspend his driver's license because a final suspension hearing was not held within forty-two days of the charged offense, as required by 23 V.S.A. § 1205(h) (final suspension hearing may not occur more than forty-two days after alleged offense without consent of defendant or showing of good cause). We conclude that the final hearing was not untimely.

¶ 3. Defendant was arrested on February 16, 2002, and charged with DUI, second offense. On February 25, the arraignment on the criminal charge and the preliminary civil suspension hearing took place. Defendant filed several motions, and the district court scheduled the final suspension hearing for March 26. At the hearing on that date, defendant moved to exclude the breath test because of the State's failure to provide a complete printout of all analytical results and other data stored in the DataMaster machine used to collect his breath sample. The court denied the motion after the State advised that it had forwarded defendant's discovery request to the Department of Health, but that not all of the requested material had been supplied due to the Department's limited resources. When the court was unable to complete the hearing and had to continue it until the following Monday, April 1, defendant filed a motion to dismiss. The court denied that motion as well, stating that the delay had been caused by defendant's discovery requests. The final hearing was completed on April 1.

¶ 4. Because the hearing was held within the statutory time frame as provided by our rules, we need not consider whether the court found good cause for the delay and, if so, whether the evidence supports such a finding. The forty-second day following the alleged offense was Saturday, March 30, 2002. "In computing any period of time prescribed or allowed by 23 V.S.A. § 1205 and this rule [concerning procedures for civil license suspensions], Rule 6(a) shall apply except that *intermediate* Saturdays, Sundays and state or federal legal holidays shall be included in the

computation." D.C.C.R. 80.5(i) (emphasis added). Under V.R.C.P. 6(a), in computing the time period under the applicable statute, "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a State or federal legal holiday, . . . in which event the period runs until the end of the next day which is not one of the aforementioned days." Hence, in this case, the final day of the applicable statutory time period was Monday, April 1, 2002, the day on which the final suspension hearing was completed.

¶ 5. We now turn to defendants' arguments challenging the procedures adopted by the Department of Health concerning the collection of breath samples. We begin by providing some factual and legal background that is needed to put defendants' arguments in perspective. In February 1992, pursuant to the directives in 23 V.S.A. § 1203, the Department of Health promulgated regulations that required certain methods of analysis for breath samples and established noninstrument-specific performance standards. See 4 Code of Vermont Rules 13 140 003 (1997). One of the subsections of the regulations, which were implemented in compliance with the Vermont Administrative Procedure Act (APA), provided that the specific instruments and procedures for analysis of breath samples had to be approved by the Commissioner of Health. See *id.* C(I)(6). Pursuant to this rule, the Commissioner adopted the analytical instruments and procedures outlined in the Vermont Criminal Justice Training Council manual, which had not been promulgated under the APA's formal rulemaking requirements.

¶ 6. In *State v. Rolfe,* 166 Vt. 1, 686 A.2d 949 (1996), a case involving approximately one hundred consolidated appeals, the defendants challenged the validity of the Department of Health's regulations relating to methods for the analysis of infrared breath tests. This Court considered whether the Department's regulations were legally sufficient to meet the requirements of the DUI statute and, in particular, 23 V.S.A. § 1203(d), which provides, in relevant part, as follows:

> In the case of a breath test administered using an infrared breath testing instrument, the test shall be analyzed in compliance with rules adopted by the department of health. . . . A sample is adequate if the infrared breath testing instrument analyzes the sample and does not indicate the sample is deficient. . . . The analysis performed by the state shall be considered valid when performed according to a method or methods selected by the department of health. The department of health shall use rule making procedures to select its method or methods.

¶ 7. The defendants argued, among other things, that the Department's regulations were incomplete because they failed to include step-by-step procedures for analyzing breath samples. We found this argument unavailing, holding that the Legislature intended a less specific approach by providing that a sample from an infrared breath-testing device would be considered adequate if the device did not reject it. *Rolfe*, 166 Vt. at 8-9, 686 A.2d at 955. We determined that, under § 1203(d), the required foundation for admissibility of breath tests is a showing that the analysis of the sample was performed according to the methods selected by the Department of Health. *Id.* at 12, 686 A.2d at 957. As long as the State demonstrates that the analysis of the challenged sample was performed by an *instrument* that meets the Department's performance standards, the defendant may not otherwise challenge the *admissibility* of the test result; rather, the defendant can only contest the foundation facts or urge the factfinder to give little or no weight to the test. *Id.* at 13, 686 A.2d at 957.

¶ 8. Since our holding in *Rolfe*, we have consistently refused to suppress breath tests based on claims that the processing officer failed to follow the adopted procedures for administering the tests. In *State v. Guidera*, 167 Vt. 598, 707 A.2d 704 (1998) (mem.), the defendant argued that the district court should have suppressed his breath test because the arresting officer had failed to observe him for fifteen minutes before administering the test to assure the absence of mouth alcohol. Although we indicated that we did not need to reach the argument presented because another sample had been taken, we pointed out that, under *Rolfe*, breath test results are admissible as long as the State could show that the analysis had been performed by an instrument that met the Department of Health's performance standards. *Id.* at 599-600, 707 A.2d at 705. We noted that the defendant was arguing merely that the officer had failed to employ the instrument properly, not that the instrument had failed to meet the performance standards. *Id.*

¶ 9. Similarly, in *State v. Massey*, 169 Vt. 180, 730 A.2d 623 (1999), the defendant claimed that the district court should have suppressed his breath test because the officer had failed to follow the procedures for administering breath tests set forth in the Vermont Criminal Justice Training Council manual. Once again, we cited our holding in *Rolfe* that the foundation for admissibility focuses on the performance of the instrument, and that while the defendant may challenge the validity of the test, the factfinder must decide its weight, once admitted. *Id.* at 186-87, 730 A.2d at 628. We specifically rejected the defendant's reliance on the

Council's training manual in support of his motion to suppress the test, stating as follows:

> The step-by-step procedures in the Council student training manual that are outlined on the DUI processing form do not affect the foundational requirements for admissibility. Defendant concedes that the officer was certified to administer the test. Defendant presented evidence that questioned the procedures, but did not introduce any evidence refuting the reliability of the instrument itself. Without evidence attacking the DataMaster's reliability, defendant's arguments go only to the weight that the jury could give to the test results and not to admissibility.

*Id.* at 187, 730 A.2d at 628.

¶ 10. With this background in mind, we now consider defendants' arguments here. According to defendants, this Court's holdings in *Rolfe* and *Massey* are fundamentally flawed because they are predicated on two universally acknowledged fallacies: (1) that specific protocols for the administration of breath tests are not needed; and (2) that an infrared breath-testing device is capable of determining, on its own, whether a breath sample will produce an accurate and reliable reading of alcohol concentration in the breath. In defendants' view, because it is generally acknowledged that the DataMaster device does not always reject samples containing mouth alcohol, and that the only way to assure that a sample is untainted by mouth alcohol is to follow the fifteen-minute observation period set forth in the training manual, it is critical to have formally adopted rules pertaining to the collection of breath samples. Defendants contend that the Department's adoption of the procedures contained in the student manual, without adhering to the notice and comment period established in the APA, frustrates the legislative design for summary suspension proceedings and deprives DUI suspects of due process.

¶ 11. We find these arguments unavailing. Neither § 1203(d) nor any other section of the DUI statute compels the Department of Health to establish rules pertaining to the collection of breath samples. As we stated in *Rolfe*, 166 Vt. at 5-6, 10, 686 A.2d at 953, 956, the Department "fully implemented the statutory mandate" by promulgating its February 1992 regulations regarding the analysis of breath samples. With respect to the collection of samples, the only statutory requirement is that the breath tests be administered "by a person who has been certified by the Vermont criminal justice training council to operate the breath testing equipment

being employed." 23 V.S.A. § 1203(a); see also § 1202(a)(1) (breath test "shall be administered at the direction of a law enforcement officer").

¶ 12. Defendants describe the Legislature's intent to rely on omniscient devices as folly, and assert that rules on the collection of samples are necessary despite the Legislature's assumption in § 1203(d) of the validity of analyses performed according to methods adopted by the Department. These complaints should be directed at the Legislature, not the courts. Meanwhile, in the present forum, defendants have failed to directly challenge the DataMaster's reliability with respect to the regulations promulgated by the Department of Health pursuant to the governing statute. Absent that, defendants are relegated to arguing that the test result should be given little or no weight because of a failure to follow the adopted procedures for collection of samples. See *Massey*, 169 Vt. at 187, 730 A.2d at 628 ("Without evidence attacking the DataMaster's reliability, defendant's arguments go only to the weight that the jury could give to the test results and not to admissibility."); *State v. Magoon*, 128 Vt. 363, 367, 264 A.2d 779, 781 (1970) ("It is not required that the results of accepted chemical testing methods be infallible to be admissible. If the test affords reasonable assistance to the triers of the fact, technical shortages in the manner or method of proof may affect its weight but do not control its admissibility.").

¶ 13. Although not required to do so by the governing statute, the Department has adopted procedures for the collection of breath samples. Defendants have not attempted to demonstrate how any of these procedures are inaccurate or incomplete; indeed, with respect to the fifteen-minute observation period, it is generally acknowledged that all mouth alcohol will evaporate within that period of time. Nor do defendants cite any violations of the adopted procedures with respect to the cases on appeal. Rather, relying on *Parker v. Gorczyk*, 173 Vt. 477, 787 A.2d 494 (2001) (mem.), defendants argue only that breath test results cannot be presumed valid and must be excluded because the procedures adopted by the Department were not established through the formal rulemaking process set forth in the APA.

¶ 14. Other courts have rejected similar arguments made under analogous state APA statutes. Cf. *State v. Garthe*, 678 A.2d 153, 156 (N.J. 1996) (action establishing procedures for use of breathalyzer machines was not rulemaking and therefore not subject to requirements of New Jersey APA); *State v. Straka*, 810 P.2d 888, 892 (Wash. 1991) (protocols approved by state toxicologist for analysis of breath samples were not "rules" within meaning of Washington APA). Further, we see little similarity between the detailed procedures adopted in this case and the

broad policy directly affecting the length of prisoners' confinement that was adopted by the Commissioner of the Department of Corrections in the *Parker* case.

¶ 15.  But even assuming that formal rulemaking was required to adopt the training manual procedures, defendants gain nothing from their argument. As noted, the regulations promulgated by the Department under the APA are sufficient for purposes of admissibility of infrared breath tests, and the governing statute does not require regulations pertaining to the collection of breath samples. Hence, the only remedy available to defendants would be for this Court to invalidate the procedures adopted from the training manual, including the fifteen-minute observation period. For the reasons stated above, the failure to adopt under the APA the procedures contained in the manual cannot result in the inadmissibility of the tests. Cf. *State v. Stevens Equip. Co.*, 998 P.2d 1278, 1283-84 (Or. Ct. App. 2000) (even assuming that district attorney was required to comply with Oregon APA rulemaking procedures in adopting guidelines for prosecution of environmental crimes, dismissal of criminal indictment was not remedy available to defendant; defendant's criminal liability derived from violation of substantive environmental statutes, while guidelines bear only on decision whether to prosecute). Indeed, invalidating those procedures would only limit the ways in which defendants could challenge the reliability of the test results in their particular cases.

¶ 16.  Defendants insist that because the procedures were not adopted under the APA and are thus invalid, the State cannot prove that their samples were taken and evaluated in compliance with Department regulations; therefore, their test results cannot be presumed reliable and valid. The flaw in this reasoning is that, even without the adopted procedures concerning the collection of breath samples, the State can demonstrate all that is required for admissibility of the test results.

*Affirmed.*