2005 VT 43

**STATE of Vermont v. Shawn GIARD**

[871 A.2d 976]

No. 04-034

¶ 1. March 23, 2005. Defendant Shawn Giard appeals from a district court order suspending his automobile operator's license following a civil license suspension hearing pursuant to 23 V.S.A. § 1205. We reverse.

¶ 2. On September 8, 2003, at approximately 9:30 p.m., defendant struck an oncoming vehicle while backing onto a busy road from his driveway. After checking

on the other motorist and leaving his license with her, defendant left the scene and proceeded to the home of his wife, from whom he was separated. A third party witness to the accident called the Colchester police department, and two officers arrived at the scene shortly after the accident. No witness to the accident reported any suspicion that defendant was intoxicated at that time. The first officer located defendant at his wife's home at approximately 9:50 p.m., spoke with defendant about the accident, and observed defendant's damaged truck. The second officer arrived at the residence at approximately 10:06 p.m.

¶ 3. Defendant was drinking a beer when the first officer arrived, and he continued drinking in the presence of the police until the second officer asked him to stop several minutes after his arrival. After questioning defendant about the accident and his drinking, the officers took defendant into custody at approximately 10:30 p.m. for operating a motor vehicle while intoxicated. At the police station, defendant submitted to a breath test and registered a BAC level of 0.188% at 11:12 p.m.

¶ 4. The testimony and evidence presented at the civil suspension hearing yielded an unclear picture of how much alcohol defendant consumed on the evening of the accident. On direct examination, defendant testified that he drank two sixteen-ounce beers and one twelve-ounce beer earlier in the evening prior to the accident, approximately between the hours of 7:00 and 8:30 p.m. Defendant further testified that he consumed a minimum of a quarter-pint of vodka and five twelve-ounce beers between the time he arrived at his wife's home and the time he left in police custody. On cross-examination by the State, defendant testified that he drank a maximum of seven twelve-ounce beers and nearly a half-pint of vodka. Defendant's wife testified that she witnessed him drink at

least four beers while at her house. According to police affidavits, defendant claimed to have consumed between four and seven beers and roughly a half pint of vodka after arriving at his wife's home. No one witnessed him drink the vodka, and, although defendant advised the officers that he threw the bottle into the woods behind his wife's home, they did not attempt to locate it.

¶ 5. During the hearing the State called an expert chemist, Theodore Manazir, and asked him to calculate the BAC levels of a 165-pound male who had consumed alcohol in three hypothetical situations. In the first, the male consumed 44 ounces of beer from 7:00 to 8:45 p.m., then operated a vehicle at 9:15. Mr. Manazir calculated a BAC at 9:15 of approximately 0.068%. The second hypothetical was limited to post-operation consumption — assuming that the male consumed 84 ounces of beer and 5 ounces of vodka between 9:30 and 10:25 p.m., Mr. Manazir calculated an approximate BAC of 0.185% at 11:13 p.m. The third hypothetical combined the first two, assuming that the male consumed 44 ounces of beer from 7:00 to 8:45 p.m. and 84 ounces of beer and 5 ounces of vodka between 9:30 and 10:25 p.m. In this instance, Mr. Manazir calculated the BAC to be approximately 0.253% at 11:13 p.m. Notably, Mr. Manazir did not calculate defendant's BAC at the time he was driving the car based on his BAC of 0.188% from the breath test at 11:12 p.m.,* nor did the State present any di-

---

* Mr. Manazir calculated the BAC's in the latter two hypotheticals at 11:13 p.m., while defendant actually took the breath test at 11:12 p.m. on the night of the accident. Hence, when we refer to defendant's actual BAC, we use 11:12 p.m. as the relevant time, and we use 11:13 p.m.

rect evidence to relate back defendant's BAC level to the time he operated his vehicle earlier that evening or to contradict defendant's testimony regarding his pre-accident consumption of alcohol.

¶ 6. Finding defendant's testimony untruthful, the district court decided in favor of the State based on the evidence presented, including the testimony of Mr. Manazir, and the presumption contained in 23 V.S.A. § 1205(n):

> In a proceeding under this section, if there was at any time within two hours of operating, attempting to operate or being in actual physical control of a vehicle an alcohol concentration of 0.08 or more, it shall be a rebuttable presumption that the person's alcohol concentration was 0.08 or more at the time of operating, attempting to operate or being in actual physical control.

¶ 7. On appeal, this Court must reverse the decision if the district court's factual findings are not supported by the evidence, or if its conclusions are not supported by the findings. *Spaulding v. Butler*, 172 Vt. 467, 475, 782 A.2d 1167, 1174 (2001). Because defendant's testimony was sufficient to rebut the statutory presumption and the State produced no direct evidence that defendant's BAC exceeded 0.08% at the time of operation, we cannot agree with the district court's conclusion that "[a]t the time that [defendant] was operating, his blood alcohol content was above .08."

¶ 8. The central issue on appeal is whether defendant's own testimony about when and how much alcohol he consumed is sufficient to rebut the pre-

___

when discussing Mr. Manazir's hypotheticals.

sumption of intoxication found in § 1205(n). A civil presumption places the burden of going forward with the evidence on the party against whom it operates. *Rocque v. Co-operative Fire Ins. Ass'n of Vt.*, 140 Vt. 321, 325-26, 438 A.2d 383, 386 (1981). Within two hours of operating his vehicle, defendant registered a BAC over 0.08%, triggering the presumption contained in § 1205(n). Thus, defendant had to produce evidence sufficient to rebut this presumption.

¶ 9. The evidentiary threshold for rebutting the presumption is a modest one, because "a disputable presumption is 'locative, merely' — i.e., '[i]t points out the party on whom lies the duty of going forward with evidence on the fact presumed' — and of itself contributes 'no evidence and has no probative quality.'" *Chittenden v. Waterbury Ctr. Cmty. Church, Inc.*, 168 Vt. 478, 492, 726 A.2d 20, 29 (1998) (quoting *Tyrrell v. Prudential Ins. Co. of Am.*, 109 Vt. 6, 23, 192 A. 184, 192 (1937)). Accordingly, we have held that to rebut the presumption in § 1205(n), a defendant must only "produce evidence sufficient to support a finding" that his BAC was under 0.08% at the time of operation. *State v. Pluta*, 157 Vt. 451, 454, 600 A.2d 291, 293 (1991). A party is not required to "overcome the presumption with evidence," *id.* (quotations omitted), but must only produce evidence "fairly and reasonably tending to show that the real fact is not as presumed," *Tyrrell*, 109 Vt. at 23, 192 A. at 192. Once he or she has done so, "the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption." *Id.* As we recognized in *Pluta*, a defendant cannot rebut the presumption by "rais[ing] a mere theoretical possibility that the presumed fact does not exist." 157 Vt. at 454, 600 A.2d at 293. Thus, "[t]o fairly put the presumed fact in issue, specific evidence is required to show that the presumed fact was not true in

the particular case, given its actual underlying facts and circumstances." *Id.*

¶ 10. This case contrasts with *Pluta*, where we held that the defendant failed to rebut the presumption. There, the defense offered an affidavit and testimony from Mr. Manazir that it was theoretically "possible for a person to have a test result over [the legal limit] within 2 hours of operation and be under [the legal limit] at the time of operation." *Id.* at 452, 600 A.2d at 292 (quotations omitted). Because Mr. Manazir had not analyzed the particular facts of the case, he was unable to opine on the defendant's BAC at the time of the accident. *Id.* We rejected the trial court's conclusion "that evidence of a general, theoretical nature was sufficient to rebut [the statute's] presumption," *id.* at 455, 600 A.2d at 293, because a presumption "is not rebutted simply by recognizing the possibility that it can be rebutted," *id.* at 454, 600 A.2d at 293.

¶ 11. On the other hand, in this case defendant testified about how much alcohol he consumed on the evening of the accident, and when he consumed the alcohol. Defendant testified that he consumed approximately 44 ounces of beer before 8:45 p.m., and then drank heavily *after* arriving at his wife's home — the last point at which he operated a vehicle. Thus, defendant's testimony, coupled with Mr. Manazir's testimony that a 165-pound man who consumed 44 ounces of beer from 7:00 to 8:45 p.m. would have a BAC at 9:15 of approximately 0.068%, fairly and reasonably tended to rebut the statutory presumption that defendant's BAC was 0.08% or more at the time he last operated his vehicle. As a result, the State could not rely on the presumption.

¶ 12. Once the presumption disappeared, the State retained the burden to produce evidence showing defendant was intoxicated at the time he operated his vehicle. The State produced no such evidence. Mr. Manazir never related back

defendant's BAC of 0.188% from the breath test at 11:12 p.m. to the time of operation. Indeed, his testimony suggests only that defendant consumed less than the maximum amount to which he testified, but sheds no light on how much defendant consumed before the accident. No other testimony or evidence disputes defendant's account of either his pre-accident or post-operation consumption. Therefore, even though the trial court discredited defendant's testimony, the court could only speculate about defendant's BAC at the time of operation, as there was no evidence in the record to support a finding that defendant's BAC was 0.08% or more. Accordingly, we reverse.

*Reversed.*