2013 VT 113



State v. Burnett (2012-255 &
2012-296)

 

2013 VT 113

 

[Filed 27-Nov-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 113
 
  


 Nos. 2012-255 & 2012-296
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Jason Burnett
 
 
 February Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Alison
 S. Arms, J. (2012-255)
 Brian J. Grearson, J.
 (2012-296)
 
 
  
 
 Thomas J. Donovan, Jr., Chittenden County State’s Attorney,
Andrew R. Strauss, 

  Deputy State’s Attorney, Burlington, and Gregory S.
Nagurney, Deputy State’s Attorney,

  Montpelier, for Plaintiff-Appellee.

 

Richard R. Goldsborough and Gregory J. Glennon of
Kirkpatrick & Goldsborough, PLLC, 

  South Burlington, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
DOOLEY, J.   Defendant appeals the civil suspension of
his driver’s license and the admission of the breath-test results in his
criminal prosecution for driving under the influence of intoxicating liquor
(DUI).  Defendant contends that because the test results were obtained
after the testing machine registered a “fatal error,” the breath-test analysis
did not meet the requisite performance standards, and thus the necessary
foundation for admissibility was not laid.  We affirm the court’s decision
denying suppression in the criminal case, and reverse and remand the civil
suspension.

¶ 2.            
On December 4, 2011, at around 3 a.m., an officer of the Burlington
Police Department stopped defendant after observing him speeding and driving
erratically.  Based on the officer’s observations, he commenced a DUI
investigation.  After the officer had defendant perform standard
field-sobriety tests, he arrested defendant and transported him to the police
station for DUI processing.  At the stationhouse, defendant agreed to
provide an evidentiary breath sample.  The officer used a DataMaster
infrared breath-testing machine to conduct the breath analysis.  During
the first attempt, the machine produced an error message of “standard out of
range.”  The officer restarted the machine and attempted again to obtain a
test result.  This time, the machine produced a result of .229 without an
error message.  

¶ 3.            
Defendant requested a second test result.  The officer attempted
another test but received another “standard out of range” error message. 
Again, the officer restarted the machine and obtained a result of .260 without
indication of error.  

¶ 4.            
Defendant was charged with DUI subject to criminal proceedings pursuant
to 23 V.S.A. § 1201(a)(2) and a civil license suspension under 23 V.S.A. §
1205.  Defendant filed a motion to suppress and dismiss in both cases,
claiming that after receiving a standard-out-of-range error, the officer’s
training instructed him to use a different machine.  Because the officer
failed to follow the correct procedure, defendant argued that the result was
not reliable, citing 23 V.S.A. § 1205(h).  Defendant filed a supplemental
motion to suppress and dismiss arguing that the discrepancy between the two
tests negated their reliability and made them inadmissible.  In support,
defendant submitted a letter and affidavit from an expert.  

¶ 5.            
On April 11, 2012, the court held a hearing on defendant’s
motions.  The day before, the State had filed a motion to allow its
chemist to testify by telephone on the basis that the witness would be
inconvenienced by the travel.  Defendant’s attorney objected.  The trial
court denied the State’s motion because the State provided defendant
insufficient notice of its request, and this prevented defendant from properly
preparing for or conducting an effective cross-examination in both the civil
and criminal cases.  The court then indicated its intent to dismiss the
criminal case based on the State’s lack of an expert.  Pursuant to the
State’s request, the court agreed to delay entering dismissal for ten
days.  

¶ 6.            
The court proceeded with the suppression hearing in the civil suspension
proceeding.  Without objection, the court admitted the chemist’s
affidavit, the DUI processing form, the officer’s affidavit and the DataMaster
tickets.  

¶ 7.            
The Burlington police officer testified for the State.  He
described administering the breath-alcohol test to defendant.  He
explained that after he received the first error message, he understood from
his training that he was supposed to transport defendant to a different
location and use a different machine, but he decided not to proceed in this
fashion.  The officer testified that based on his experience, the
DataMaster machine sometimes produces an error message when there is alcohol
emitting from the defendant’s person in an enclosed area.  He therefore
went ahead and restarted the machine and conducted a test.  When
describing his attempt to obtain a second test result, he explained that he
received a second standard-out-of-range message before restarting the machine
and obtaining a usable result.  On cross-examination, he agreed that the
standard-out-of-range message was a “fatal error.”  He also agreed that,
according to his training, he was supposed to proceed to a different machine
after encountering such an error. Defendant introduced the section of the
manual produced by the Vermont Criminal Justice Training Council that
catalogued this message as a fatal error.  

¶ 8.            
Defendant presented expert testimony from a forensic consultant, who
formerly worked as a state employee.  The witness explained that she had
reviewed the breath-test memory reports and status record summaries for the
instrument used on defendant, as well as maintenance records from the
Department of Health.  She opined that it was not a “good choice” for the
officer to proceed with using the machine after it produced the
standard-out-of-range message because the message was an indication that the
simulator vapor was not reading within the required five-percent
accuracy.  She further testified that the particular machine’s reliability
was suspect because the breath test summaries showed a history of errors, and
because apparently the machine failed its accuracy testing shortly after it was
used on defendant and was sent back to the manufacturer.  The witness also
questioned the reliability of defendant’s tests because of the discrepancy
between the results.  She opined that the disparity between the tests was
greater than is typically seen.  On cross-examination, she conceded that a
standard-out-of-range message does not always indicate that a test result is
unreliable.  She maintained, however, that given the discrepancy between
the results, and the machine’s history of problems, she believed the tests were
not reliable.  

¶ 9.            
The court took the civil suspension matter under advisement.  The
court also informed the parties that it would allow the State to file a
supplemental motion, and would wait ten days before dismissing the criminal
proceeding.

¶ 10.        
The State submitted a post-hearing motion to reconsider the dismissal of
the criminal case.  The State argued that under State v. Rolfe, 166
Vt. 1, 686 A.2d 949 (1996), and 23 V.S.A. §§ 1203(d) and 1205(h), the results
of an infrared breath test are admissible if the State shows that the analysis
was performed by an instrument that meets the performance standards set by the
Department of Health,[1]
and the instrument met those standards at the time of the test.  The State
alleged that defendant could contest the foundation facts, but could not otherwise
challenge the admissibility of the test.  According to the State,
defendant did not contest the facts relevant to admission, including that: the
DataMaster met the relevant standards, operated according to those standards
during the tests, and was operated by a person certified to administer the
test.  Because these foundation facts were unchallenged, the State claimed
that suppression was not the proper remedy.  In the alternative, the State
asked to proceed in the criminal case without the result of the test, given the
other evidence of intoxication. 

¶ 11.        
In response, defendant claimed that he was indeed attacking the
admissibility of the test in the criminal proceeding.  He alleged that
because the officer did not follow the proper procedure following the error
message, the DataMaster failed to meet the applicable performance standards,
and the results were inadmissible.

¶ 12.        
The court issued a written order on July 2, 2012.  As to the civil
suspension, the court found that the State’s expert’s affidavit provided a
sufficient basis to establish that the test in this case was performed by an
instrument that meets the standards of the Department of Health rules and that
the instrument met those standards while analyzing the sample in this
case.  The court found that although the machine returned a
standard-out-of-range message, it subsequently returned a breath-alcohol
reading, which indicated that the machine was working at the time of the test. 
The court concluded that the results were not invalid simply because the
officer did not follow directions from the training manual.  Rather, he
elected to restart the machine based on other training and experience. 
The court explained that the officer’s failure to follow the instructions in
the training manual did not warrant exclusion of the test result because
deficiencies in the procedure were different from evidence refuting the
reliability of the instrument.  The court emphasized that even defendant’s
expert conceded that the error message did not necessarily indicate that the
results taken before or after the message were invalid.  Therefore, the
court concluded that defendant had failed to rebut the presumption in §
1205(h), and entered judgment for the State.

¶ 13.        
As to the criminal case, the court denied the motion to suppress,
concluding that defendant’s challenge went to the weight of the evidence, not
admissibility.  The court also concluded that there were no grounds to
dismiss the criminal charge because the State had sufficient evidence of
impairment other than the test to demonstrate a prima facie case.  The
court denied defendant’s motion to reconsider its decision.  Defendant
then entered a conditional guilty plea in the criminal case and appealed both
judgments.

¶ 14.        
We begin with the criminal proceeding.  Defendant was charged with
operating a vehicle under the influence of intoxicating liquor.  23 V.S.A.
§ 1201(a)(2).  Defendant filed a motion to suppress the results of his
evidentiary breath test, which the court ultimately denied.  On appeal
from denial of a motion to suppress, we give deference to the court’s factual
findings and review the legal questions de novo.  State v. Fletcher,
2010 VT 27, ¶ 8, 187 Vt. 632, 996 A.2d 213 (mem.).

¶ 15.        
Defendant’s motion to suppress was based on a challenge to the
admissibility of the breath-test results.  The relevant statute sets out
the foundation required to admit a breath test: “The analysis performed by the
state shall be considered valid when performed according to a method or methods
selected by the department of health.”  23 V.S.A. § 1203(d).  We have
held that the sentence should be read with “the term ‘admissible’ rather than
‘valid.’ ”  Rolfe, 166 Vt. at 12, 686 A.2d at 957. 
Therefore, a breath-test result is “admissible if the State shows that the
analysis was performed by an instrument that meets the performance standards
contained in the rules of the Department of Health, and the instrument met
those performance standards while employed to analyze the sample.”  Id.
at 13, 686 A.2d at 957.  Defendants can contest the foundation facts, but
“may not otherwise challenge the admissibility of a test result although they
may, of course, urge the jury to give it no weight.”  Id.  

¶ 16.        
Defendant argues that the State offered insufficient evidence to
demonstrate the necessary foundation facts.  Initially, the court agreed
that without expert testimony, the State lacked a sufficient basis to
demonstrate the foundation facts.  The court reconsidered its decision,
however, and held that because admissibility is a determination for the court
not subject to the rules of evidence, V.R.E. 104(a), the court could consider
the state chemist’s affidavit in assessing admissibility.  On appeal,
defendant does not challenge the court’s ability to consider the affidavit in
assessing admissibility, but instead argues that the affidavit alone is
insufficient because defendant rebutted it with testimony from his expert.

¶ 17.        
The threshold for admissibility is set by § 1203(d).  State v.
McQuillan, 2003 VT 25, ¶ 7, 175 Vt. 173, 825 A.2d 804 (statute sets “the
required foundation for admissibility of breath tests”).  

As long as the State demonstrates that
the analysis of the challenged sample was performed by an instrument
that meets the [Health] Department’s performance standards, the defendant may
not otherwise challenge the admissibility of the test result; rather,
the defendant can only contest the foundation facts or urge the factfinder to
give little or no weight to the test.

Id.  Here, the State
met those requirements.  The state chemist averred that the DataMaster
machine used on defendant met the performance standards established by the
Department of Health.  The affidavit further stated: “The reporting of an
alcohol concentration of a person’s breath by the DataMaster is evidence that
the instrument had successfully met all internal and external quality control
reviews and had been operating properly at the time the breath sample was
analyzed.”  In other words, the fact that the officer was able to obtain a
test result indicates that the machine was operating properly at the time of
the test.[2] 
Therefore, the chemist’s affidavit was sufficient to meet the standard for
admissibility of the breath-test result.  

¶ 18.        
Defendant raises two issues he claims negate the admissibility of the
tests.  We consider each in turn.  First, defendant argues that the
officer’s failure to follow the procedures set forth in the training manual
after receiving the standard-out-of-range message renders the test result
inadmissible.  In support of this argument, defendant’s expert testified
that the officer did not administer the tests in accordance with the officer’s
training.  The officer agreed that according to his training, when he
received the error message, he was supposed to turn off the DataMaster machine
and use a different one.  This testimony is supported by the admitted
portion of the manual, which instructs that an officer “should consider
[certain messages, including the ‘standard out of range’] ‘fatal errors’ and
proceed to a different DataMaster.”  Although we agree that the officer
did not follow his training and the procedures set forth in the manual, we
conclude that this failure implicates the reliability of the tests and not
their admissibility.  

¶ 19.        
As explained above, the admissibility standard is met when the test is
performed according to standards set forth by the Department of Health. 
None of those standards dictate how the officer is to employ the
DataMaster.  The statute’s directive to the Department of Health is to set
performance standards, not the manner of collection.  McQuillan,
2003 VT 25, ¶ 11.  Further, although the training manual specifies that a
machine should not be used after a standard-out-of-range message has been
received, the Department’s rules do not incorporate the manual.[3]  Thus, this Court has held that an
officer’s failure to follow procedures outlined in the training manual does not
affect whether the State has satisfied the foundation requirements for
admissibility.[4] 
State v. Massey, 169 Vt. 180, 187, 730 A.2d 623, 628 (1999).  Thus,
if a defendant claims that the proper procedures were not followed in
administering the test, the argument goes to weight, not admissibility.  McQuillan,
2003 VT 25, ¶ 12.  Although defendant styles his objection as one
implicating whether the machine was working properly at the time of the tests,
his evidence did not show that a result obtained after an error message meant
the machine was operating outside the performance standards set by the
Department of Health, only that the result might be unreliable.

¶ 20.        
This distinction is confirmed by the testimony of defendant’s
expert.  As to the significance of following the correct procedure,
defendant’s expert offered that continuing to use the DataMaster after
receiving the error implicated the reliability of the results.  She did
not opine that the DataMaster was incapable of meeting performance standards
after returning an error message, or that the error message indicated some
inherent nonfunctioning of the particular machine.  The expert also did
not rebut the state chemist’s statement that a machine’s reporting of a
breath-alcohol concentration indicates that all required internal and external
quality controls have been met.  See Vezina, 2004 VT 62, ¶ 5
(“[T]he fact that the DataMaster was able to detect the problem during the
second sequence does not give reason to surmise that the instrument
malfunctioned during the first one; rather, it is evidence that, had the
problem been present during the first test, the instrument would have not issued
a report.”).  Thus, while defendant’s expert’s testimony was relevant to
show that the test result was unreliable in this case, it did not undermine the
admissibility of those results.

¶ 21.        
Defendant’s second attempt to undercut the foundation facts for
admissibility is based on the discrepancy between the two results. 
Defendant’s expert testified that there was a “large difference” between the
two results and this raised a concern.  Again, we conclude that the
discrepancy between the two test results is insufficient to undermine the
foundation facts necessary for admissibility.  There is no requirement in
the Department of Health rules that the two tests be within a certain
percentage of one another.  Further, the expert did not define how much of
a discrepancy is too much or opine that the discrepancy indicated the machine
did not meet Department of Health performance standards.  The crux of her
testimony was that she had concerns about whether the instrument was working
properly.  While this evidence is relevant to the reliability of the
machine and whether the test results should be given weight, it does not
undercut the fact that the machine met the performance standards necessary for
admissibility of test results.[5] 
Therefore, we conclude that the test results were admissible and affirm the
court’s denial of defendant’s motion to suppress in the criminal proceeding.

¶ 22.        
Next, we turn to the civil suspension adjudication.  Civil
suspension is a summary proceeding “designed to serve the remedial purpose of
protecting public safety by quickly removing potentially dangerous drivers from
the roads through purely administrative means.”  State v. Anderson,
2005 VT 80, ¶ 2, 179 Vt. 43, 890 A.2d 68.  At the final hearing in a civil
suspension proceeding, the issues are limited and include “whether the test
results were accurate and accurately evaluated.”  23 V.S.A.
§ 1205(h)(1)(D).  

¶ 23.        
To achieve the goal of having “a speedy and summary procedure to get
drunk drivers off the roads” the statute employs the use of presumptions. 
Anderson, 2005 VT 80, ¶¶ 3, 8 (discussing rebuttable presumption that
test result over 0.08 taken within two hours of operation indicates person’s
alcohol concentration was over 0.08 at time of operation); see also State v.
Pluta, 157 Vt. 451, 453-54, 600 A.2d 291, 292-93 (1991) (describing how
rebuttable presumption in a civil suspension proceeding aids in summary
resolution).  The standard for admissibility of a test result remains 23
V.S.A. § 1203(d).  See Rolfe, 166 Vt. at 14, 686 A.2d at 958. 
Once the test is admitted, a presumption regarding reliability arises:
“Evidence that the test was taken and evaluated in compliance with rules
adopted by the department of health shall be prima facie evidence that the
testing methods used were valid and reliable and that the test results are
accurate and were accurately evaluated.”  23 V.S.A. § 1205(h)(1)(D). 
This presumption is not about admissibility, but concerns the burden of production. 
It allows the state to prove summarily that the testing methods were valid and
reliable and that the results were accurate.  Rolfe, 166 Vt. at 13,
686 A.2d at 958.  It “shifts the burden of going forward with evidence
challenging the test result on the defendant.”  Id. at 14, 686 A.2d
at 958.  To rebut the presumption, defendant must present evidence to show
that “the reliability and validity of the testing methods and the accuracy of
the test results” is not true in defendant’s particular case.  Id. 


¶ 24.        
As set forth above, the State satisfied the § 1203(d) test regarding the
admissibility of the evidence based on the affidavit from the state
chemist.  Therefore, the State had the benefit of the §1205(h)(1)(D)
presumption regarding the validity and reliability of the test results.

¶ 25.        
The question is therefore whether defendant’s evidence was sufficient to
rebut the statutory presumption.  See V.R.E. 301 (explaining effect of
statutory presumptions).  The trial court concluded that defendant’s
evidence was insufficient because it was theoretical and not specific to
defendant.  

¶ 26.        
To rebut the presumption, defendant was required to “produce evidence
fairly and reasonably tending to show that the real fact is not as
presumed.”  State v. Giard, 2005 VT 43, ¶ 9, 178 Vt. 544, 871
A.2d 976 (mem.) (quotation omitted).  Defendant’s expert testified that
she had concerns about the reliability of the samples obtained in defendant’s
case based on the officer’s failure to follow procedure, the history of the
machine’s errors, and the discrepancy between the results.  She explained
that the standard-out-of-range error indicates that the “simulator
vapor . . . is not reading within the five percent accuracy
required.”  Therefore, her opinion was that tests taken after receiving
such an error message could be compromised.  She further opined that there
was some question as to this particular machine’s accuracy based on the
machine’s history of error messages and the difference between the two
results.  Given that defendant’s expert provided opinions specific to the
instrument used to obtain defendant’s test results and about the particular
circumstances surrounding collection of defendant’s tests, we conclude that
there was sufficient evidence to rebut the presumption.  Cf. State v.
Wells, 172 Vt. 603, 606, 779 A.2d 680, 684 (2001) (mem.) (holding defendant
failed to rebut statutory presumption where evidence was not particular to the
facts and circumstances of the case).  We cannot uphold the trial court’s
conclusion to the contrary.

¶ 27.        
Our conclusion is consistent with our recent decision in State v.
Spooner, 2012 VT 90, 192 Vt. 465, 60 A.3d 640.  In that case, a
trooper performed a series of breath tests to measure the defendant’s
blood-alcohol content.  He obtained a reading of .101 on the first test;
his second attempt returned a “standard out of range” error; the third returned
a report of “invalid sample;” and on his fourth try he obtained a reading of
.109.  The State sought civil suspension of defendant’s operating license,
and defendant argued that he was denied a second test.  The defendant
claimed that the second test was not reliable because the trooper failed to
comply with his training, which instructed him to proceed to a different
machine after receiving the error message.  The trial court concluded that
the trooper’s failure to comply with operating protocol undermined the
reliability of the second breath-test result and thus deprived defendant of the
benefit of a second test.  The State appealed.  On appeal, this Court
emphasized that the question was not the admissibility of the breath-test
evidence, but the reliability of the test result, and this was a question of
fact reviewable for clear error.  Id. ¶¶ 10-11.  We
acknowledged the statutory presumption of reliability, and explained that where
an officer does not comply with correct operating procedures, “the fact finder
is free to find the converse of the presumption.”  Id. ¶ 13. 
Because evidence indicated the trooper did not comply with the proper
procedures, we concluded that the court’s finding that the second test was
unreliable was not clearly erroneous.  Id. ¶ 18.

¶ 28.        
Thus, Spooner confirmed that an operator’s failure to abandon a
machine that returned a standard-out-of-range message may undercut the
reliability of any test result obtained thereafter, but does not affect its
admissibility.  It further confirmed that if a defendant produces evidence
that a sample was collected in a manner inconsistent with an officer’s
training, this is sufficient to rebut the presumption of reliability in the a
civil suspension proceeding.  Id. ¶ 13.  Because defendant
introduced such evidence in this case, as in Spooner, he rebutted the
statutory presumption in § 1205.

¶ 29.        
Once defendant rebutted the presumption, the State retained the burden
of persuasion to demonstrate that the tests were indeed reliable.  Giard,
2005 VT 43, ¶ 12.  To support its case, the State relied on the expert’s
affidavit and the arresting officer’s testimony that, based on his experience,
the error message at times results from alcohol being emitted from defendant’s
person in an enclosed space.  

¶ 30.        
“Whether a test is reliable or accurate is a factual finding.”  Spooner,
2012 VT 90, ¶ 11.  This Court reviews the trial court’s factual
findings for clear error.  Id.  Here, the trial court did not
weigh defendant’s evidence against the State’s or make a decision regarding
reliability because the court determined that defendant had failed to rebut the
statutory presumption.  On the evidence before us, the trial court can
determine that the test results are either reliable or unreliable.  This
is primarily a choice between the expert evidence presented through the State’s
affidavit and the evidence of defendant’s expert witness.  In essence, the
State’s expert says that the machine’s reporting of an alcohol concentration in
a person’s breath means that the machine is working properly and reliably;
defendant’s expert witness disagrees on the facts of this case.  It is up
to the fact-finder to resolve the conflict.  We reverse and remand the
judgment in the civil suspension proceeding for the trial court to make this
assessment in the first instance. 

¶ 31.        
Defendant’s final argument with respect to the civil suspension
proceeding relates to the reliability of his second test.  Under the
statute, a defendant is entitled to request a second test.  23 V.S.A.
§ 1202(d)(5).  Assuming that the first test is deemed reliable,
defendant argues that he was denied a reliable second test.  This argument
relates solely to the civil suspension proceeding because a valid second test
is not an element of criminal DUI charge.  See Spooner, 2012 VT 90,
¶ 17.  In making this argument, defendant primarily relies on Spooner,
wherein we affirmed the trial court’s finding that the second test was not
reliable and therefore that the State failed to carry its burden of demonstrating
that it complied with the requirements of § 1202.  See 23 V.S.A.
§ 1205(h)(1)(E) (requiring state to demonstrate in a civil proceeding that
it complied with § 1202).  The question of the reliability of the second
test is a factual one for the trial court to assess in the first
instance.  In light of our remand to the trial court to determine the
reliability of both tests, this issue should be addressed by that court in the
first instance if necessary. 

The civil suspension is
reversed and remanded.  The order denying the motion to suppress in the
criminal proceeding is affirmed.

 

 


  
 
 
  
 
 
 FOR THE COURT:
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 

¶ 32.        
SKOGLUND, J., dissenting.   Simply put, the State
failed to demonstrate that the DataMaster used on defendant’s breath sample was
operating according to the standards set by the Department of Health at the
time of the test.  Before returning any results, the machine produced
a standard-out-of-range error, indicating that it could not properly analyze
the breath sample to the degree of accuracy required.  The machine was not
working.  This “fatal error,” as it is described in the Vermont Criminal
Justice Training Council’s manual on Infrared Breath Testing Device, could not
be remedied by simply turning the machine off and on again.  Because of
this error, the necessary foundation for admissibility of a test result was not
laid.  Accordingly, I would reverse the civil suspension adjudication and
the denial of the motion to suppress in the criminal case.

¶ 33.        
Under State v. Rolfe, 166 Vt. 1, 686 A.2d 949 (1996), and 23
V.S.A. §§ 1203(d) and 1205(h)(1)(D), the results of an infrared breath test are
admissible if the State shows that the analysis was performed by an instrument
that meets the performance standards set by the Department of Health, and that
the instrument met those standards at the time of testing.  This
admissibility standard applies to both civil suspension and criminal
proceedings.  See Rolfe, 166 Vt. at 13, 686 A.2d at 952.  The
particular machine used to calibrate the percentage of alcohol in defendant’s
breath could not meet, at the time in question, the performance standards of
the Department of Health, which is exactly what the machine reported to the
officer.  Therefore, the State failed to show that the result provided by
the instrument that was experiencing a standard-out-of-range error and could
not properly calibrate results was admissible.  

¶ 34.        
Contrary to the State’s argument and the majority’s conclusion, the
state chemist’s boilerplate affidavit fails to provide the necessary
foundational facts.  The chemist stated that a DataMaster machine was an
approved method of breath testing, was a reliable instrument for measuring
breath-alcohol content, and met its internal and external quality controls if
an alcohol concentration was reported.  

¶ 35.        
Although the affidavit is sufficient to show that the DataMaster
instrument, as a device to discern what percentage of alcohol is in a specific
breath sample, meets the Health Department’s standards, it is insufficient to
establish that the instrument employed in this case met those standards at the
time of the test.  See id. at 13, 686 A.2d at 957 (admissibility
requires that the instrument meets performance standards and “met those
performance standards while employed to analyze the sample”).  When first
used, the machine did not report an alcohol concentration, but returned a fatal
error message, indicating that the standard was out of range.  The state
chemist’s affidavit says nothing about the particular machine used to test
defendant’s breath sample or whether that machine could operate properly after
returning a standard-out-of-range error.

¶ 36.        
Moreover, the State offered no testimony to rebut the defense expert’s
opinion that it was improper for Officer Mellis to proceed with using the
machine after it produced the standard-out-of-range message.  She
explained that the message was an indication that the “simulator
vapor . . . is not reading within the five percent accuracy
required.”  This violates a performance standard set by the Department of
Health.  Breath and Blood Analysis Rule § (C)(I)(2), 4 Code of Vt. Rules
13 140 003 (2012).  The State produced no evidence to counter defendant’s
expert’s testimony that the error message meant the machine was not meeting its
internal quality controls.  Because the machine did not function in
accordance with the Department of Health performance standards, the State
failed to establish that the necessary admissibility requirements were
met.  See Kennedy v. Dir. of Rev., 73 S.W.3d 85, 87 (Mo. Ct. App.
2002) (concluding that there was an insufficient foundation for breath results
after officer used machine that had returned an error result), overruled on
other grounds by Verdoorn v. Dir. of Rev., 119 S.W.3d 543, 546 (Mo. 2003).

¶ 37.        
The officer’s testimony that, in his experience, a machine may produce
this error message when there is alcohol emitting from a subject in an enclosed
space is insufficient to rebut defendant’s expert’s testimony.  This Court
has emphasized in the past that instrument- performance standards exist in
order to make it clear whether a machine is operating properly by having “the
machine itself [] find and indicate errors, obviating the need to prevent
errors by precisely regulating the breath-testing procedure.”  Rolfe,
166 Vt. at 8-9, 686 A.2d at 955.  By producing the error message, the machine
indicated that it was not in working order and could not meet the required
performance standards.  The officer’s anecdotal observation about why the
error may have occurred did not speak to whether the machine was capable of
meeting required controls in this case.  The officer has no particular
expertise in the functioning of the machine, and his observation was not
particular to the error received by the machine in this case.  

¶ 38.        
It bears repeating that Officer Mellis agreed that the standard-out-of-range
message he received was a “fatal error.”  He understood from his training
that he was supposed to transport defendant to a different location and use a
different machine, but instead chose to proceed, turning the machine off and on
again—the equivalent, I suppose, of kicking the vending machine to get what you
paid for when your candy is stuck.  Because the DataMaster is designed to
identify internal abnormalities and alert the user that there is an error in
its calibration abilities, turning the machine on and off until you get a
result hardly seems appropriate.  

¶ 39.        
The majority’s reliance on cases rejecting challenges to admissibility
based on noncompliance with procedures in the training manual are not relevant
to this case.  See ante, ¶¶ 18-19.  Although defendant’s
argument is presented as one involving the officer’s failure to comply with his
training, it is not so much the officer’s failure to follow the procedures that
makes the results inadmissible here, but the machine’s self-reported internal
error.  I agree that the manual itself is not part of the Health
Department’s performance standards, and that an officer’s failure to follow
procedures outlined in the training manual does not affect the foundation
requirements for admissibility.  See State v. Massey, 169 Vt. 180,
187, 730 A.2d 623, 628 (1999).  However, unlike other situations involving
challenges based on a failure to follow procedures, the failure in this case
was the instrument’s internal error, not the officer’s manner of administering
the test.  Cf. McQuillan, 2003 VT 25, ¶ 12 (faulty procedure in
administering test goes to reliability not admissibility).  The machine’s
error message indicated that it was not operating within the performance
standards set by the Department of Health.  Consequently, any test result
obtained after that error message was inadmissible.

¶ 40.        
Finally, the fact that the machine produced a result subsequent to the
fatal error message does not validate the test result.  In State v.
Vezina, 2004 VT 62, 177 Vt. 488, 857 A.2d 313 (mem.), the officer obtained
a first test result, but the machine returned an out-of-range error message
during the officer’s attempt to obtain a second result.  We explained that
the error message did not render the first test inadmissible.  “[T]he fact
that the DataMaster was able to detect the problem during the second sequence
does not give reason to surmise that the instrument malfunctioned during the
first one: rather, it is evidence that, had the problem been present during the
first test, the instrument would have not issued a report.”  Id. ¶
5.  Here, the error was received on the officer’s first attempt to conduct
an evidentiary breath test.  The machine was not functioning properly from
the outset.  The error message thus tainted all of the following test
results, making them inadmissible.

¶ 41.        
The majority’s attempt to distinguish our decision in State v.
Spooner is unpersuasive.  In Spooner, the State sought to rely
on a successful test conducted after a fatal- error message.  The trial
court “determined that the State did not comply with its own testing procedures
and that this failure to adhere to the protocol deprived defendant of a valid
and reliable second test as required by § 1202.”  2012 VT 90,
¶ 8, 192 Vt. 465, 60 A.3d 640 (emphasis added).  On appeal, we noted
that 23 V.S.A. § 1205(h)(1)(D) provides that “[e]vidence that the test was
taken and evaluated in compliance with rules adopted by the department of
health shall be prima facie evidence that the testing methods used were valid
and reliable.”  Id. ¶ 13.  Pointing to the officer’s
noncompliance with the requirements of the Department of Health’s manual, which
provided that a machine registering a fatal error should be taken out of
service, we stated that the successful test taken after the fatal error “was
definitively not conducted in compliance with the State’s own
procedures.”  Id.  We affirmed the trial court’s holding, and,
in keeping with the way the case was presented to us, focused our discussion on
the “reliability” prong of § 1205(h)(1)(D).  We did not directly
address the admissibility, or “validity” prong of that section of the statute,
but recognized that the State’s use of a test result obtained after a fatal
error did not meet the requirements under § 1205(h)(1)(D)—the same
requirements at issue here.  Having now been presented with the question
directly, I would hold that the error message made the ensuing test results
inadmissible—a result entirely consistent with our holding in Spooner
that the fatal error rendered the subsequent test unreliable. 

¶ 42.        
Because the State failed to meet the § 1203(d) test regarding the
admissibility of the evidence based on the affidavit from the state chemist,
the test results were not admissible in the civil or criminal proceeding. 


¶ 43.        
I am authorized to state that Justice Robinson joins this dissent. 

 


  
 
 
  
 
 
 FOR THE COURT:
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  











[1] 
At the time this case was filed, § 1205 delegated rule-making authority to the
Department of Health.  Due to a legislative change, the Department of
Public Safety is now responsible for adopting the relevant rules.  See
2011, No. 56, § 16 (eff. March 1, 2012).  





[2]
 This point is the center of the disagreement between this opinion and the
dissent.  The dissent says summarily “The machine was not working.”  Post,
¶ 32.  To the contrary, the State’s expert affidavit states that the
machine was working properly if it reports an alcohol concentration, which it
twice did here.  This is the conclusion of State v. Vezina, 2004 VT
62, ¶ 5, 177 Vt. 488, 857 A.2d 313 (mem.), a case cited by both this
opinion and the dissent.





[3] 
Following a legislative change, the Department of Public Safety is now
delegated with the rule-making authority over breath-testing devices.  We
note that the Department of Public Safety’s rules do incorporate the manual,
instructing: “The operator will follow procedures incorporated in the Vermont
Criminal Justice Training Council Student Manuals in effect at the time of
testing and approved by the Commissioner of Public Safety.”  See Vt. Dep’t
of Public Safety, Breath and Blood Alcohol Analysis Rule (C)(II), Code of Vt.
Rules 28 060 002 (2013).  We make no judgment on the significance of this
regulatory change.

 





[4] 
Defendant cites cases from Missouri to support his contention that an officer’s
failure to turn off a breath-testing machine after an error message makes the
result inadmissible.  See, e.g., Kennedy v. Dir. of Rev., 73 S.W.3d
85, 87 (Mo. Ct. App. 2002) (concluding that there were sufficient facts to
support court’s finding that there was an insufficient foundation for breath
test results after officer used machine that had returned an error message), overruled
on other grounds by Verdoorn v. Dir. of Rev., 119 S.W.3d 543 (Mo.
2003).  The Missouri statute differs from the Vermont statute, however, in
that it includes a provision requiring an operator to cease using a machine
that is not functioning properly.  See id. 





[5] 
We have held that a disparity in two test results does not make the results
inadmissible in at least two nonprecedential three-justice memorandum
decisions.  See State v. Howe, Nos. 2006-429, 2006-432, 2007 WL
5313288, at *3 (Vt. Mar. 28, 2007) (unpub. mem.) (holding that Department of
Health rules do not require agreement between two successive results); State
v. Springer, Nos. 2006-433, 2006-434, 2007 WL 5315017, at *4 (Vt. Feb. 28,
2007) (unpub. mem.) (explaining that tests need not be compared to be
admissible, arguments go to weight of evidence).  By our decision today,
we make this a precedential holding.