*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-454

MAY TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Caledonia Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Hillary Lumbra | } | DOCKET NO. 61-9-14 Cacs |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Defendant appeals the civil suspension of her driver's license for driving with a breath-alcohol concentration (BAC) that exceeded the legal limit of .08. We affirm.

Defendant was the operator of a vehicle in a single-car accident. State police who responded to the accident observed indicia of intoxication while interacting with defendant. After defendant was unable to successfully perform field sobriety exercises, she consented to a preliminary breath test, which revealed a BAC of .135. She was transported to the state police barracks, where she was processed for driving while intoxicated. At the time of the processing, she was bleeding from a fractured nose and was swallowing blood. She agreed to submit a breath sample, which revealed a BAC of .151.

After being served with a notice of intent to suspend her driver's license, see 23 V.S.A. § 1205(c), defendant timely requested a hearing to contest the suspension. Id. § 1205(f). Defendant indicated several issues she would raise at the suspension hearing, including "whether the testing methods used were valid and reliable, and whether the test results were accurate and accurately evaluated." Id. § 1205(h)(1)(D). "Evidence that the test was taken and evaluated in compliance with rules adopted by the Department of Public Safety [is] prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated." Id. Claims that a processing officer did not follow protocols adopted for administering breath tests go to the weight rather than the admissibility of the test. State v. McQuillan, 2003 VT 25, ¶¶ 6-9, 175 Vt. 173.

At the suspension hearing, the State relied exclusively on two affidavits, one from the processing officer and one from a chemist at the Vermont Forensic Laboratory. She averred, among other things, that the particular DataMaster machine used in this instance met the applicable performance standards and that the .151 test result is an accurate and valid indication of the alcohol content in defendant's system at the time that the test was administered. Defendant relied on the testimony of her expert witness, a former chemist for the Vermont Department of Health who does independent forensic consulting. She testified that the breath-test result submitted by the State was unreliable because of the presence of blood in defendant's

mouth at the time the test was administered. She further testified that the breath test was not administered in accordance with protocols requiring the processing officer: (1) to make sure that the subject does not have food, gum, tobacco, or any other "foreign matter" in his or her mouth; and (2) to ensure that the subject does not burp, belch, or vomit for an uninterrupted fifteen minutes before administration of the test. On cross-examination, defendant's expert acknowledged that those protocols did not actually mention blood as a foreign substance, that she had never tested the performance of the DataMaster with subjects bleeding in the mouth, and that there are no studies of the performance of infrared devices like the DataMaster with subjects bleeding in the mouth. At the conclusion of the hearing, defendant moved to exclude the test result, arguing as follows:

> This goes to weight, but under the instant circumstance, taking a breath sample from a suspect who was actively bleeding into her oral cavity for the period immediately prior to, up to and through the evidentiary analysis renders the test sufficiently unreliable that the State cannot prove on this record by a preponderance that [defendant's] BRAC was .08 or higher at the operative time.

The superior court, criminal division entered judgment for the State, stating that even if it could not conclude that the protocols were completely complied with in this instance, it found by a preponderance of the evidence that the test result was sufficiently accurate to yield a reliable BAC in excess of .08. In so ruling, the court cited many indicia of impairment observed by the police and defendant's own acknowledgment of having had three drinks of vodka. The court also concluded, in the alternative, that defendant had failed to show that blood in the mouth is actually a foreign substance with respect to protocols for administering breath tests.

On appeal, defendant argues that she introduced substantial evidence to demonstrate that her breath test was not acquired in compliance with protocols set forth in the manual for administering DataMaster breath tests. She contends that as a result of the test being administered while there was alcohol-laden blood in her mouth, the test result may have been inaccurately high. According to defendant, because the State failed to provide evidence contradicting the fact that administration of the breath test did not comply with protocols, it adduced no evidence that the test was reliable, and thus the superior court's decision is not supported by the evidence.

The flaw in defendant's reasoning is that the State did in fact contest her assertion that the breath test was not administered according to protocols in the training manual. The State argued, and defendant's expert conceded, that neither of the two protocols upon which she relied— ensuring the absence of a "foreign matter" in the mouth and making sure that defendant did not burp, belch, or vomit for fifteen minutes preceding administration of the test—mentioned anything about blood in the mouth. The documents submitted by the State indicated that the processing officer observed defendant for fifteen minutes in which she did not burp, belch, or vomit, and that defendant acknowledged that she did not burp, belch, or vomit during that period. Moreover, the State argued that blood was not a "foreign matter," and defendant's expert acknowledged on cross-examination that there had not been any studies linking blood in the mouth to the performance of infrared devices. As an independent alternative basis for entering a judgment in favor of the State, the superior court stated that it was unable to conclude, on the record before it, that blood in the mouth was actually a "foreign matter" within the meaning of the training protocols. In so ruling, the superior court cited the holding in City of Sunnyside v.

2

Fernandez, 799 P.2d 753, 755 (Wash. Ct. App. 1990), that one's own blood was not a "foreign substance" under the procedure for administering the DataMaster requiring that the subject not have any "foreign substances" in his or her mouth at the time a breath test is obtained.

Defendant does not address this alternative reasoning by the superior court. Rather, as indicated above, she contends that the State provided no evidence contradicting the fact that the breath test was not acquired in compliance with current protocols for administering DataMaster breath tests. We conclude that defendant has failed to demonstrate that her breath test was not administered in compliance with training protocols. Therefore, there remains a presumption that her test result was accurate. 23 V.S.A. § 1205(h)(1)(D). Based on the record before us, we uphold the court's determination that the State proved by a preponderance of the evidence that "the testing methods used were valid and reliable" and that "the test results were accurate and accurately evaluated." Id.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice

3